# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JOSE R. LUNA,

    Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,

    Defendant.

2:15-cv-01104-RCJ-NJK

**ORDER**

This case arises out of an insurer's alleged breach of an underinsured motorist policy. Pending before the Court is a Motion for Partial Summary Judgment (ECF No. 18). For the reasons given herein, the Court grants the motion in part and denies it in part.

## I.  FACTS AND PROCEDURAL HISTORY

On or about October 13, 2011, Plaintiff Jose R. Luna was involved in an automobile collision with a non-party in Las Vegas, Nevada, causing Plaintiff injury, pain, suffering, and loss of earning capacity. (*See* Compl. ¶¶ 1, 7–12, ECF No. 1-1). The non-party's liability coverage provided the policy limits of $25,000, but Plaintiff had incurred medical expenses of $60,378.15 at the time he filed the Complaint and expected to incur more medical expenses in the future. (*See id.* ¶¶ 13, 16). At the time of the collision, Plaintiff was insured by Defendant State Farm Mutual Automobile Insurance Co. under Policy No. 047 2348-B07-28B (the "Policy"). (*Id.* ¶ 14). The Policy included an uninsured/underinsured motorist provision (the

"UIM Provision") for $25,000 per person and $50,000 per occurrence, but Defendant rejected Plaintiff's demand to pay the $25,000 policy limits under the UIM Provision, offering only $7,800. (*Id.* ¶¶ 15, 17–20).

Plaintiff sued Defendant in state court for: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the implied covenant of good faith and fair dealing ("insurance bad faith"); (4) unfair claims practices under Nevada Revised Statutes section ("NRS") 686A.310; (5) declaratory relief; and (6) punitive damages. Defendant removed and has now moved for summary judgment against all claims but the first.

## II.   SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even

where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III.  ANALYSIS

Defendant has moved for defensive summary judgment against the second through sixth causes of action, i.e., all causes of action except the first cause of action for breach of contract. Defendant first argues broadly that as a matter of law there can be no extra-contractual liability against an insurer based on a "value dispute." The Court rejects this argument. Whether an extra-contractual claim by an insured against his insurer is viable depends on the facts of the insurer's actions in processing and/or denying the insured's claim. The Court is aware of no case law limiting extra-contractual claims to disputes centering purely on coverage or liability as opposed to damage amounts, and Defendant cites to none. Disputes between insurers and their insureds are quite often based on disagreements over the value of a claim, and it is neither theoretically nor legally impossible for an insurer to act in bad faith as to the value of a claim. The question in such a case is whether the insurer acted in bad faith in evaluating the value of a claim. None of this is to say that the present motion should necessarily fail. It may be the case that no reasonable jury could find bad faith or any statutory violation by Defendant, but that will have to be determined under the summary judgment standards, not because of any supposed per se bar against extra-contractual claims arising out of value disputes.

### A.    Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing

The Court finds that Plaintiff has not made out a claim for violation of the contractual breach of the covenant of good faith and fair dealing. A contractual breach of the covenant of good faith and fair dealing arises when "terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton*

*Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991).  Plaintiff has not made any allegations that would support this cause of action.  Plaintiff argues only that Defendant did not comply with the terms of the contract. (*See* Compl. ¶ 31 ("Defendant State Farm breached its duty of good faith and fair dealing by, among other things, refusing Plaintiff full compensation due under the uninsured/underinsured coverage provisions.")).  This is a verbatim restatement of the claim for breach of contract. (*See id.* ¶ 26).  A claim for a contractual breach of the covenant of good faith and fair dealing in the present context would read something like, "Although Defendant complied with the literal terms of the UIM Provision, it [insert unfair activity here] so as to reduce its liability thereunder in contravention of the spirit of the contract."  Plaintiff makes no such allegation.  The present motion is one for summary judgment, not dismissal, but Plaintiff has provided no evidence that could lead a jury to find a contractual breach of the implied covenant of good faith and fair dealing apart from the alleged breach of contract itself.  The Court therefore grants summary judgment against this claim.

    **B.**  **Insurance Bad Faith**

    A violation of the covenant of good faith and fair dealing in the insurance context gives rise to a bad-faith tort claim. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009).  To establish a prima facie case of insurance bad faith, "the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998), *opinion modified on denial of reh'g*, 979 P.2d 1286 (1999).  No insurance bad faith claim lies where the insurer has a reasonable basis for challenging a claim. *See Allstate*, 212 P.3d at 324.  But summary judgment is not warranted on an insurance bad faith claim simply because the question of liability was "fairly debatable" at the time of the denial. *See Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 956–57 (Nev. 1998)

(citing *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1137 (Ariz. 1982)).  Summary judgment is only appropriate where no reasonable jury could find from the evidence adduced that there was no reasonable basis to deny the claim.

In support of its motion, Defendant adduces evidence of the claim history in this case.[1] Sometime prior to March 27, 2014, Plaintiff requested a certified copy of the Policy from Defendant. (*See* Huffman Letter, Mar. 27, 2014, ECF No. 18-4, at 15).  In its response, Defendant noted that a certified copy would be sent within a week but noted that any amount payable under the UIM Provision would be reduced by amounts already paid, that could have been paid, or that could be paid via worker's compensation laws, disability laws, or other similar laws. (*See id.*).  On October 23, 2014, Defendant made a settlement offer of $1,000. (*See* Korich Letter, ECF No. 18-4, at 17).  On January 28, 2015, Plaintiff made a $25,000 policy-limit demand. (*See* Nettles Letter, ECF No. 18-4, at 2).  The letter itemized Plaintiff's medical expenses and wage loss totaling $62,204.70 and noted that the third party's liability policy limit was $15,000. (*See id.*).[2]  In response, Defendant sent a letter noting that it had received no documentation for the $1,399.57 allegedly paid or payable to Walgreen's Pharmacy or any documentation concerning lost wages. (*See* Huffman Letter, Feb. 2, 2015, ECF No. 18-4, at 11).  Defendant later made a settlement offer of $7,800. (*See* Huffman Letter, Mar. 24, 2015, ECF No. 18-4, at 12).

---

1 The parties do not appear to dispute coverage or the limits of the UIM Provision.

2 Although the letter is dated January 28, 2014, the letter states that the demand was supplemental to a demand made "in February of 2014" and notes that Defendant is entitled to offset the $15,000 paid or payable by the third party and the full amount of a yet undetermined worker's compensation lien. (*See id.* 3).  The date discrepancy is resolved by noting that the facsimile heading indicates a date of January 28, 2015.  The "2014" date of the letter in the heading is therefore likely a typographical error.

Defendant adduces internal claim-processing documents indicating how it came to its calculations. An Auto Injury Evaluation dated June 3, 2015 indicates past medical bills of $60,378.15, past pain and suffering ranging from $15,061.69 to $21,000, and payments or offsets of $60,378.15 by "PIP/AB/MPC" and $7,261.69 by "Other Insurance," leaving a "Net Evaluation Range" of $7,800 to $13,738.31. (*See* Auto Injury Evaluation 4–5, ECF No. 18-4, at 6). Notes indicate $15,000 was paid by "OIC," as well as the following note for "W/C": "W/C [o]nly paid $19280.29, however our policy language states could have been paid, should have paid or would have been paid, therefore all medical specials of $58,864.58, should have been paid via W/C, so we take the full amount as an offset." (*Id.* 5). It also notes the previous offers of $1,000 and $7,800. (*See id.*).

As Plaintiff points out, his complaint is with the fact that although the negligent party's insurance only paid $15,000 and worker's compensation only paid $19280.29, Defendant credited itself $60,378.15 against Plaintiff's claim based on Defendant's interpretation of the UIM Provision, which provides for offset for worker's compensation benefits that "have already been paid . . . could have been paid . . . or could be paid." In *Phelps v. State Farm Mut. Auto. Ins. Co.*, 917 P.2d 944 (Nev. 1996), the Court approved a contractual offset against worker's compensation benefits to avoid a double recovery as not against public policy. *See id.* at 947–48. The Court first noted that "the purposes of UM coverage are to make the claimant whole and to avoid double recovery . . . ." *Id.* at 947. The Court then noted that it had previously approved a contractual offset under a UIM provision for "sums paid or payable under any worker's compensation . . . ." *Id.* (quoting *Cont'l Cas. v. Riveras*, 814 P.2d 1015 (Nev. 1991)) (internal quotation marks omitted). The Court reasoned that even where an insured has paid premiums for his UIM coverage, it is not against public policy to permit a contractual offset so long as the offset functions only to avoid a double recovery and not to prevent the insured being made

1 whole. *See id.* at 947–48 (citing *Ellison v. C.S.A.A.*, 797 P.2d 975, 978 (Nev. 1990); *Mid–
2 Century Ins. Co. v. Daniel*, 705 P.2d 156 (Nev. 1985)). The Court approved the offset in *Phelps*
3 where "there [wa]s no possibility that enforcement of the offset provisions w[ould] deny Phelps a
4 full recovery for his injuries because Phelps ha[d] already been made whole through a
5 combination of payments." *Id.* at 948. The Court then reiterated that the purpose of UM/UIM
6 coverage was to make an insured whole and that that contractual offsets were permitted to
7 prevent double recovery. *See id.*

8 In reply, Defendant clarifies that all of Plaintiff's medical bills were in fact paid. That is,
9 although worker's compensation did not pay the full amounts the providers originally charged,
10 that is because the difference was written down by the providers under a pre-existing agreement
11 with worker's compensation. Under such circumstances, the Court finds that the exclusion
12 should apply, and because the result is only to avoid a double recovery, not to avoid Plaintiff
13 being made whole, the exclusion is not against public policy. Indeed, Defendant need not even
14 argue that the difference falls under the exclusion, because the difference is an amount of
15 liability that Plaintiff simply did not incur. Unlike a case where a plaintiff seeks *damages* from a
16 tortfeasor and is entitled to the full reasonable amount of damages caused regardless of any
17 discounts in treatment under the collateral source doctrine, *see, e.g.*, *McConnell v. Wal-mart*
18 *Stores, Inc.*, 995 F. Supp. 2d 1164, 1169–73 (D. Nev. 2014) (Jones, J.), in the context of a
19 contractual claim under an insurance policy, a plaintiff is entitled only to *contractual*
20 *reimbursement* from the insurer. Unlike damages payable by a tortfeasor, contractual
21 reimbursement payable under a policy of insurance is measured not by the reasonable cost to
22 remedy the harm but by the actual amounts paid or incurred by the insured. With contractual
23 reimbursement, a court needn't adopt a collateral-source-type rule to avoid a windfall to a bad
24 actor. To the contrary, a rule permitting a tort victim to recover written-down amounts not only

from the tortfeasoror but also from the tort victim's own insurer under a UIM provision would shift a pure measure of tort damages from a tortfeasor to an insurer.

So the Court agrees with Defendant on the law, but the problem here is that Defendant offers no evidence tending to show that the $41,097.86 of Plaintiff's medical bills that worker's compensation did not pay was in fact forgiven by Plaintiff's providers. Although it is unlikely Defendant is fabricating that fact, the Court cannot assume it is true on Defendant's say-so. Under the interpretation of the UIM Provision most favorable to Plaintiff, *see Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 184 P.3d 390, 392 (Nev. 2008), amounts beyond the limits on Plaintiff's worker's compensation coverage could not have been paid. "Could" must be interpreted to mean that Plaintiff had the possibility of demanding payment under worker's compensation if the word can bear that meaning, which it can. Plaintiff argues that he did not have that ability due to limits on coverage. Defendant's interpretation of "could" to its own benefit to mean something like the theoretical possibility that worker's compensation could have paid voluntarily might not constitute good faith even where an insured is otherwise made whole; it certainly seems unfaithful where an insured has not been made whole. Moreover, here it appears from her notes on page 5 of the Auto Injury Evaluation that Huffman imported her own language of "*should* have been paid" into the UIM Provision, but the copy of the Policy adduced by Defendant itself makes clear there is no such language in the exclusion. (*See* Policy 3, ECF No. 18-2, at 9 (emphasis added)). The Court cannot grant summary judgment against the insurance bad faith claim under these circumstances. Again, the Court may reconsider if Defendant can adduce evidence of the write-down, but the Court will not summarily adjudicate the bad faith claim based on the evidence currently available.

///

///

### C.     NRS 686A.310

The statute lists 16 types of "unfair practices." *See* Nev. Rev. Stat. § 686A.310(a)–(p). Plaintiff alleges two kinds of violation in the Complaint: (1) failing to acknowledge and act reasonably promptly upon Plaintiff's claim under subsection (b); and (2) failing to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim when Defendant's liability had become reasonably clear under subsection (e). Based on the evidence recounted, *supra*, the Court denies the motion as to the claim under subsection (e). The Court grants the motion as to the claim under subsection (b), however. Although Plaintiff argues that Defendant was evasive and dilatory in handling his claim, he does not provide evidence of when demands were made or calculations and evidence of bills provided apart from the evidence already adduced by Defendant. The $7,800 offer was made within two months of Defendant receiving the January 2015 letter listing the medical bills (which was presumably accompanied by evidence supporting the bills, except for the Walgreen's Pharmacy bill). There is no evidence of any particular demand having been made before that letter but only of a previous request for a certified copy of the Policy and a $1,000 settlement offer.

### D.     Declaratory Relief

Defendant notes that the declaratory relief claim is for a declaration of Plaintiff's right to "indemnification for his losses from Defendant." The Court grants summary judgment against this claim. Indemnity is a theory under which a passive tortfeasor can recover from an active tortfeasor any measure of damages for which the former has been made liable to a third person based on the latter's tortious acts. *See, e.g.*, *Black & Decker (U.S.), Inc. v. Essex Grp., Inc.*, 775 P.2d 698, 699 (Nev. 1989) (finding Black & Decker entitled to equitable indemnity from Essex where Black & Decker was strictly liable to the plaintiff due to its position in the stream of commerce but Essex was the actively negligent manufacturer). No facts have been adduced such

that a reasonable jury could find any indemnification right in this case.  Plaintiff does not allege or provide evidence to show that he has been or may be found liable to any third party as a result of Defendant's tortious acts.  If Plaintiff simply means to seek a declaration that his contractual rights have been violated and various torts committed against him, the declaratory relief claim is superfluous given the other direct claims seeking damages based on the same facts and legal theories.  *See Hood v. Super. Ct.*, 39 Cal. Rptr. 2d 296, 298–99 (Ct. App. 1995).

### E. Punitive Damages

Because one or more of the remaining claims may support punitive damages, the Court will not rule that they are unavailable at this time, although the Court notes that punitive damages are a measure of relief and not a freestanding cause of action.  Although Defendant is correct that success on a bad faith claim does not entitle a plaintiff to punitive damages without more, the Court will leave that determination to a jury.  Plaintiff must provide evidence of "oppression, fraud or malice, express or implied." Nev. Rev. Stat. § 42.005(1).  Because the Court cannot further define the quoted terms for the jury according to the statute in this insurance bad faith case, *see id.* § 42.005(5) (1995), the jury has a wider ability to award punitive damages than in a typical case.  The Nevada Supreme Court does not appear to have adopted definitions of the relevant terms for insurance bad faith cases and indeed does not appear to have addressed the standards for punitive damages in an insurance bad faith case where the underlying events postdated the 1995 statute.  The Court will therefore not adopt any narrowing definition of those terms.  Plaintiff has provided sufficient evidence for a reasonable jury to conclude that Defendant acted with "oppression, fraud or malice, express or implied" as those terms may be interpreted by a layperson.

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Partial Summary Judgment (ECF No. 18) is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated this 19th day of April, 2016.

_____
ROBERT C. JONES
United States District Judge